**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| Shanna Donovan, | ) | |
| | ) | |
| Plaintiff, | ) | 9:05-3217-CWH |
| | ) | |
| vs. | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On November 6, 2006, the plaintiff filed a complaint alleging that the defendant is liable for the injuries that she incurred when she slipped and fell on the second floor landing of G Barracks at the Marine Corps Air Station in Beaufort, South Carolina. On February 28, 2007, and March 1, 2007, the Court tried this case non-jury. After hearing the testimony, gauging the credibility of the witnesses, and reviewing the exhibits, the evidence presented, and the briefs submitted by the parties, the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

**1.** In January 2003, Nolan Russo ("Russo") was stationed at the Marine Corps Airstation in Beaufort, South Carolina; he lived on the third floor of G Barracks.

**2.** On January 23, 2003, the plaintiff, then Russo's fiancee, flew to South Carolina to visit Russo.

**3.** The plaintiff and Russo rented a car during the plaintiff's visit and spent the evening

of January 23, 2003, in a motel.

**4.** On January 24, 2003, around 12:30 pm, the plaintiff accompanied Russo to his barracks so that he could change for work and she could use the rental car while he was working.

**5.** The couple ascended the stairs on the north side of G Barracks to enter Russo's residence on the third floor.

**6.** After Russo changed, the plaintiff and Russo descended the stairs on the north side of G Barracks.

**7.** The stairway has two railings. The higher railing is flat and wooden; the lower railing is round and metal.

**8.** The round, metal railing on the left hand side of the stairs descending from the third floor to the second floor landing was detached at the top of the stairs and attached at the bottom of the stairs. The record does not reveal at what point in its descent the railing became attached to the stairs.

**9.** The round, metal railing on the right hand side of the stairs descending from the third floor to the second floor landing was attached at the top of the stairs and attached at the bottom of the stairs.

**10.** The plaintiff walked down the middle of the stairs from the third floor to the second floor without holding onto a railing and fell on ice on the second floor landing.

**11.** The plaintiff fell because she slipped on ice on the second floor landing.

**12.** There is no evidence that the plaintiff fell because the round, metal railing on the left hand side of the stairs descending from the third floor to the second floor landing was detached at the top of the stairs.

    **13.**  As a result of the fall, the plaintiff fractured her left ankle.

    **14.**  The detachment of the round, metal railing on the left hand side at the top of the stairs descending from the third floor to the second floor landing could possibly be a dangerous condition.  However, in this case, it was not a dangerous condition because there is no evidence that it played any part in the plaintiff's fall.

    **15.**  The detachment of the round, metal railing on the left hand side at the top of the stairs descending from the third floor to the second floor landing was reasonably discoverable to the plaintiff because it was open and obvious.

    **16.**  The plaintiff has not shown that the defendant knew of the detachment of the round, metal railing on the left hand side at the top of the stairs descending from the third floor to the second floor landing.  It could be inferred that the defendant knew of the detachment because of its open and obvious nature and because of Russo's testimony that the railing was detached for a period of several months, as long as he had been at the Marine Corps Airstation.  However, whether the defendant knew or did not know of the detachment is inconsequential because there is no evidence that the detached railing caused the plaintiff to fall.

    **17.**  The defendant did not warn the plaintiff of the detachment of the round, metal railing on the left hand side at the top of the stairs descending from the third floor to the second floor landing.

    **18.**  The concrete under the ice was dirty.

    **19.**  Neither the plaintiff nor Russo noticed the ice on the second floor landing until after the plaintiff fell.

    **20.**  Russo testified that the ice in pictures of the second floor landing was obvious but

that he did not inspect the landing on January 24, 2003, to discover the ice prior to the plaintiff's fall.

21.  On January 24, 2003, at 7:00 am, Sergeant Michelle Smith ("Sergeant Smith") began to work as the Duty Non-Commissioned Officer ("DNCO").

22.  At the Marine Corps Airstation in Beaufort, South Carolina, the DNCO patrols the perimeters of the barracks and other buildings over a 24-hour period.  The DNCO picks up trash and debris, takes note of Marine Corps infractions, and looks for anything out of the ordinary.

23. The DNCO is not obligated to walk up and down the stairways of the barracks.

24.  Sergeant Smith's testimony at trial was confusing.  She has testified that she did not walk up or down the stairway on the north side of G Barracks before the plaintiff fell.  Therefore, the Court finds that on January 24, 2003, Sergeant Smith did not walk up or down the stairway on the north side of G barracks before the plaintiff fell.

25.  Sergeant Smith did not see ice on the second floor landing of G Barracks before the plaintiff fell.

26.  Sergeant Smith and other Marine Corps personnel came to the aid of the plaintiff.

27.  When Sergeant Smith arrived on the scene, she saw the ice on which the plaintiff had slipped and fallen.

28.  Sergeant Smith stated words to the effect that she had seen ice earlier that morning and knew that someone would get hurt.

29.  On January 24, 2003, Kirk Jeffers was assigned to assist Sergeant Smith as the Assistant Duty Non-Commissioned Officer (ADNCO).

30. At the Marine Corps Airstation in Beaufort, South Carolina, the ADNCO assists the

DNCO and patrols the perimeters of the barracks and other buildings over a 24-hour period. The ADNCO picks up trash and debris, takes note of Marine Corps infractions, and looks for anything out of the ordinary.

**31.** The ADNCO is not obligated to walk up and down the stairways of the barracks.

**32.** On January 24, 2003, Kirk Jeffers did not walk up or down the stairway on the north side of the G Barracks before the plaintiff fell.

**33.** Kirk Jeffers did not observe ice on the second floor landing of the stairs on the north side of the G Barracks before the plaintiff fell.

**34.** When Kirk Jeffers heard that the plaintiff had fallen, he reported the plaintiff's fall to Sergeant Smith and went to the stairs on the north side of G Barracks.

**35.** When Kirk Jeffers arrived on the scene, he saw the ice on which the plaintiff had slipped and fallen.

**36.** Kirk Jeffers testified that the ice was open and obvious upon casual observance.

**37.** The ice on the stairwell was a dangerous condition.

**38.** The icy condition of the stairwell was reasonably discoverable by the plaintiff because it was open and obvious.

**39.** The defendant knew of icy conditions at the Marine Corps Airstation prior to the plaintiff's fall.

**40.** The defendant did not know of the icy condition on the second floor landing of the stairs on the north side of G Barracks prior to the plaintiff's fall.

**41.** The defendant did not warn the plaintiff of the icy condition of the stairway.

**42.** Russo drove the plaintiff to Beaufort Memorial Hospital.

**43.** The plaintiff underwent surgery at Beaufort Memorial Hospital on the evening of January 24, 2003. During surgery, brackets, screws, and plates were placed in the plaintiff's ankle.

**44.** After the plaintiff's surgery, her parents came to South Carolina and drove her to their home in Wisconsin in the family minivan.

**45.** In Wisconsin, the plaintiff continued to receive treatment for her broken ankle. She underwent debridement and physical therapy.

**46.** The plaintiff experienced pain and suffering as a result of her injury.

**47.** The plaintiff's injury resulted in permanent disfigurement.

**48.** As a result of her injury, the plaintiff incurred $36,178.54 in medical bills.

**49.** Prior to the injury, the plaintiff was a flight attendant. As a result of the plaintiff's injury, she was unable to work for six months, and she lost $9,547.29 in wages from ATA airlines.

**50.** Since the plaintiff's injury, the plaintiff has worked as a dental hygienist and has worked in a restaurant.

**51.** There is no evidence in the record regarding future damages other than the aforementioned disfigurement.

**CONCLUSIONS OF LAW**

**A.** The plaintiff, Shanna Donovan, brings this action pursuant to the Federal Tort Claims Act. 28 U.S.C. §2674, *et seq.*

**B.** Before bringing this action, the plaintiff first presented a claim to the appropriate

administrative agency for determination in accordance with 28 U.S.C. §2675(a).  Therefore, this Court has jurisdiction over the plaintiffs' claims.  Id.; see also Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994).

**C.**  This court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1346.

**D.**  South Carolina law governs this action because South Carolina is the site of the alleged tort.  28 U.S.C. §1346(b).

**E.**  The plaintiff was a licensee because she entered the Marine Corps Airstation with the defendant's consent for her own purposes rather than the defendant's benefit.  *See* Neil v. Byrum, 343 S.E.2d 615, 616 (S.C. 1986).

**F.**  To recover for her injuries, the plaintiff must prove

(1) that the defendant was negligent by:

   (a) failing to use reasonable care to discover her and avoid injury to her in carrying out activities upon the land; or

   (b) failing to use reasonable care to warn her of any concealed dangerous conditions or activities which are known to the defendant, or of any change in the condition of the premises, which may be dangerous to her, and which she may reasonably be expected not to discover

(2) and that such negligence proximately caused her injuries.  See Neil v. Byrum, 343 S.E.2d 615, 616 (S.C. 1986)(*citing* Frankel v. Kurtz, 239 F.Supp. 713, 717 (W.D.S.C. 1965)(*citing* William L. Prosser, Prosser on Torts, §77 Licensees 445 (2nd ed.)).

**G.**  The standard of proof is a preponderance of the evidence.  Montgomery v. Nat'l Convoy & Trucking Co., 195 S.E. 247, 252 (S.C. 1938).

     **H**. The plaintiff has not shown that the defendant failed to use reasonable care to discover her and avoid injury to her in carrying out activities on the land.  Even if the defendant did fail to use reasonable care to discover the plaintiff, the defendant's failure to do so did not proximately cause the plaintiff's injuries.

     **I.** The detachment of the round, metal railing on the left hand side at the top of the stairs descending from the third floor to the second floor landing was reasonably discoverable to the plaintiff and was not the proximate cause the plaintiff's injuries.  Therefore, the defendant did not have a duty to warn the plaintiff of the detachment.  Neil v. Byrum, 343 S.E.2d 615, 616 (S.C. 1986).

     **J.** The defendant did not know of the icy condition of the landing on the north side of G Barracks, which was reasonably discoverable to the plaintiff.  Therefore, the defendant did not have a duty to warn the plaintiff of the dangerous, icy condition on the second floor landing. Neil v. Byrum, 343 S.E.2d 615, 616 (S.C. 1986).

     **K.** The plaintiff may not bring an action against the Federal Government for failure to construct a building in compliance with an applicable nationally recognized building code.  40 U.S.C. §619.

     **L.** The plaintiff has not shown that any building code is applicable to the Marine Corps Barracks at the Marine Corps Airstation.

     **M.** The plaintiff has not shown that the stairs on the north side of the G Barracks violated a building code.

     **N.** The plaintiff has not shown that noncompliance with an applicable building code gave the defendant reason to know that ice would accumulate on the stairwell on the north side

of G Barracks.

## Conclusion

Accordingly, the Court finds and concludes that the defendant is not liable and responsible for the damages suffered by the plaintiff. Judgment shall, therefore, be entered for the defendant.

**AND IT IS SO ORDERED.**

                                                                **C. WESTON HOUCK**
                                                                **UNITED STATES DISTRICT JUDGE**

April 5, 2007
Charleston, South Carolina